1  DAVID CHIU, State Bar #189542
   City Attorney
2  WAYNE SNODGRASS, State Bar #148137
   TARA M. STEELEY, State Bar #231775
3  Deputy City Attorneys
   City Hall, Room 234
4  1 Dr. Carlton B. Goodlett Place
   San Francisco, California 94102-4682
5  Telephone:    (415) 554-4655
   Facsimile:    (415) 554-4699
6  E-Mail:       tara.steeley@sfcityatty.org

7  Attorneys for Defendant
   DEAN E. PRESTON, in his individual capacity
8

9              UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12  SUSAN DYER REYNOLDS, an individual,    | Case No. 3:22-cv-08408 WHO

13        Plaintiff,                        | **DEFENDANT DEAN E. PRESTON'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

14        vs.

15  DEAN E. PRESTON, in his individual
    capacity,

16        Defendant.

    | Hearing Date:    March 8, 2023
17  | Time:            2:00 p.m.
    | Judge:           Honorable William H. Orrick
18  | Place:           United States District Court
    |                  450 Golden Gate Avenue
    |                  Courtroom 2, 17th Floor
19  |                  San Francisco, CA 94102

20  | Attachments:     Declaration of Dean E. Preston
    |                  [Proposed] Order
21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... ii

NOTICE OF MOTION AND MOTION TO DISMISS ............................................... 1

STATEMENT OF ISSUES TO BE DECIDED ........................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

INTRODUCTION ...................................................................................................... 2

BACKGROUND ........................................................................................................ 3

    I.       SUPERVISOR PRESTON'S TWITTER ACCOUNT ............................. 3

    II.      PLAINTIFF SUSAN REYNOLDS' POSTS USING THE HANDLE MARINA TIMES ................................................................................................ 4

    III.    IN RESPONSE TO THREATS OF VIOLENCE AGAINST HIS FAMILY, SUPERVISOR PRESTON BLOCKED THE MARINA TIMES TWITTER ACCOUNT IN JULY 2020. ....................................................................... 5

    IV.    PLAINTIFF'S ALLEGATIONS IN THIS LITIGATION ...................... 6

    V.     THE MARINA TIMES TWITTER ACCOUNT IS NO LONGER BLOCKED FROM SUPERVISOR PRESTON'S TWITTER PAGE. ....................... 7

LEGAL STANDARD .................................................................................................. 8

DISCUSSION .............................................................................................................. 9

    I.       SUPERVISOR PRESTON IS ENTITLED TO QUALIFIED IMMUNITY. .......... 9

    II.     PLAINTIFF'S REMAINING CLAIM FOR RELIEF IS MOOT ......................... 13

         A.    Plaintiff's Claim For Declaratory And Injunctive Relief Is Moot. ............ 13

         B.    The Voluntary Cessation Exception To The Mootness Doctrine Does Not Apply ............................................................................................... 14

         C.    The Capable Of Repetition Yet Evading Review Exception To The Mootness Doctrine Does Not Apply ........................................................ 15

CONCLUSION ........................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**Federal Cases**

*Alaska Ctr. for Env't v. U.S. Forest Serv.*
    189 F.3d 851 (9th Cir. 1999) ..................................................................................15

*Already, LLC v. Nike, Inc.*
    568 U.S. 85 (2013)...................................................................................13, 14

*Am. Cargo Transp., Inc. v. United States*
    625 F.3d 1176 (9th Cir. 2010) ...............................................................................14

*Am. Rivers v. Nat'l Marine Fisheries Serv.*
    126 F.3d 1118 (9th Cir. 1997) ..................................................................................8

*Anderson v. Creighton*
    483 U.S. 635 (1987) ...................................................................................................9

*Ashcroft v. al-Kidd*
    563 U.S. 731 (2011).........................................................................................3, 9, 11

*Ashcroft v. Iqbal*
    556 U.S. 662 (2009) ...................................................................................................8

*Bd. of Trustees of Glazing Health and Welfare Tr. v. Chambers*
    941 F.3d 1195 (9th Cir. 2019) .........................................................................14, 15

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ...................................................................................................8

*Biden v. Knight First Amend. Inst. At Columbia U.*
    209 L. Ed. 2d 519 (Apr. 5, 2021)....................................................................10, 11

*Brach v. Newsom*
    38 F.4th 6 (9th Cir. 2022) ...............................................................3, 13, 14, 15

*Campbell v. Reisch*
    986 F.3d 822 (8th Cir. 2021) ...............................................................................11

*Camreta v. Greene*
    563 U.S. 692 (2011).................................................................................................10

*Carlson v. United Acads.-AAUP/AFT/APEA AFL-CIO*
    265 F.3d 778 (9th Cir. 2001) ...............................................................................15

*Cook v. Brown*
    364 F. Supp. 3d 1184 (D. Or. 2019), aff'd, 845 Fed. Appx. 671 (9th Cir. 2021) .....................15

*Davison v. Randall*
    912 F.3d 666 (4th Cir. 2019) ...............................................................................10

*Del Norte County v. U.S.*
  732 F.2d 1462 (9th Cir. 1984) ...................................................................15

*Doe v. Reed*
  697 F.3d 1235 (9th Cir. 2012) ...................................................................16

*Garnier v. O'Connor-Ratcliff*
  41 F.4th 1158 (9th Cir. 2022) ....................................................... *passim*

*Harlow v. Fitzgerald*
  457 U.S. 800 (1982)....................................................................................9

*Hollingsworth v. Perry*
  570 U.S. 693 (2013)....................................................................................8

*Hunter v. Bryant*
  502 U.S. 224 (1991)....................................................................................9

*Knight First Amend. Inst. at Columbia U. v. Trump*
  928 F.3d 226 (2d Cir. 2019) ......................................................................10

*Knight First Amend. Inst. at Columbia U. v. Trump*
  953 F.3d 216, 231 (2d Cir. 2020) ..............................................................12

*Landers v. Quality Commc'ns, Inc.*
  771 F.3d 638 (9th Cir. 2014) .......................................................................8

*Lee v. Schmidt-Wenzel*
  766 F.2d 1387 (9th Cir. 1985) ...............................................................3, 16

*Lindke v. Freed*
  37 F.4th 1199 (6th Cir. 2022) ....................................................................10

*Malley v. Briggs*
  475 U.S. 335 (1986)....................................................................................9

*McKercher v. Morrison*
  18CV1054 JM(BLM), 2019 WL 1098935 (S.D. Cal. Mar. 8, 2019) ...........13

*Murphy v. Hunt*
  455 U.S. 478 (1982)..................................................................................13

*Packingham v. North Carolina*
  ⸺ U.S. ⸺, 137 S. Ct. 1730 (2017)..........................................................2

*Pearson v. Callahan*
  555 U.S. 223 (2009)....................................................................................9

*Protectmarriage.com-Yes on 8 v. Bowen*
  752 F.3d 827 (9th Cir. 2014) .....................................................................16

*Rosebrock v. Mathis*
745 F.3d 963 (9th Cir. 2014) ................................................................... 14

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004) ...................................................................8

*Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*
343 F.3d 1036 (9th Cir. 2003) ...................................................................8

*Scarborough v. Frederick County Sch. Bd.*
517 F. Supp. 3d 569 (W.D. Va. 2021) ....................................................11

*Steinle v. City and County of San Francisco*
919 F.3d 1154 (9th Cir. 2019) ...................................................................9

*Wagschal v. Skoufis*
442 F. Supp. 3d 612 (S.D.N.Y. 2020), aff'd, 857 Fed. Appx. 18 (2d Cir. 2021)................12, 15

*West v. City of Caldwell*
931 F.3d 978 (9th Cir. 2019) ...................................................................10

*Wilson v. Layne*
526 U.S. 603 (1999)..................................................................................12

**Constitutional Provisions**
U.S. Const.
Art. I.............................................................................................3, 13, 16
Art. III, § 2, cl. .........................................................................................8
Amend. I ........................................................................................ *passim*

**Rules**
Fed. R. Civ. P.
8(a)(2) .......................................................................................................8
12(b)(1) .................................................................................................1, 8
12(b)(6) .................................................................................................1, 8

**Other References**
Bernard Meyer, *New report: violent hashtags on Parler skyrocketed on January 6*,
September 28, 2021, available at https://cybernews.com/news/new-report-violent-
hashtags-on-parler-skyrocketed-on-january-6 ........................................6

Joe Kukura, *SF Examiner Apologizes For (Literally) Placing a Bullseye On Dean Preston's*
*Face in Print Edition*, November 17, 2022, available at https://sfist.com/2022/11/17/
sf-examiner-apologizes-for-literally-placing-a-bullseye-on-dean-prestons-face-in-print-edition/...... 5

Purge. MacMillan Dictionary, in Macmillandictionary.com. Retrieved 1/27/2023, from
https://www.macmillandictionary.com/us ...............................................6

Purge. Oxford Languages, in Langues.oup.com. Retrieved 1/27/2023, from
https://www.google.com/search?q=purge+definition...............................6

Tina Nguyen and Mark Scott, *'Hashtags come to life': How online extremists fueled Wednesday's Capitol Hill insurrection*, January 8, 2021, available at https://www.politico.eu/article/hashtags-come-to-life-how-online-extremists-fueled-wednesdays-capitol-hill-insurrection/..........................................................................................6

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2    TO THE COURT AND TO ALL PARTIES:

3         Please take notice that at 2:00 p.m. on March 8, 2023, or as soon thereafter as the matter may

4    be heard, before the Honorable William H. Orrick, of the United States District Court for the Northern

5    District of California, located at 450 Golden Gate Avenue, Courtroom 2, 17th Floor, San Francisco,

6    California 94102, Defendant DEAN E. PRESTON, in his individual capacity (collectively

7    "Defendant"), will move, and hereby move, to dismiss the First Amended Complaint ("Complaint")

8    pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure because the Complaint fails to state

9    a claim upon which relief can be granted based on qualified immunity, and pursuant to Rule 12(b)(1)

10   because the Court lacks jurisdiction.

11        This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and

12   Authorities, the accompanying Declaration of Dean E. Preston, all filings in this action, argument of

13   counsel, and such other matters as may be considered by the Court.

14

15   Dated:  January30, 2023

16                                               DENNIS J. HERRERA
17                                               City Attorney
                                                 WAYNE SNODGRASS
18                                               TARA M. STEELEY
                                                 Deputy City Attorneys
19

20                                         By:_____
                                                 TARA M. STEELEY
21

22                                               Attorneys for Defendant DEAN E. PRESTON,
                                                 In his individual capacity
23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

1.       Whether Supervisor Dean Preston is entitled to qualified immunity barring a claim for damages where it was not clearly established in July 2020 that the conduct alleged in the complaint constitutes state action and violates the First Amendment;

2.       Whether Plaintiff's claim for declaratory and injunctive relief is moot where the @TheMarinaTimes account is no longer blocked, and the case no longer presents a live controversy.

**MEMORANDUM OF POINTS AND AUTHORITIES**
**INTRODUCTION**

This case concerns the "novel" question of how to apply the First Amendment and the state action doctrine in the context of a public official's social media page.  *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1184 (9th Cir. 2022).  Government officials—from the former President of the United States to members of local school boards—have wrestled with those questions in the last few years, as social media has become, for many, "the principal sources for knowing current events, checking ads for employment, speaking and listening in the modern public square, and otherwise exploring the vast realms of human thought and knowledge."  *Packingham v. North Carolina*, ––– U.S. ––––, 137 S. Ct. 1730, 1737 (2017).  Courts too have just begun to explore the "relationship between the First Amendment and the modern Internet."  *Id.*  Only a few months ago, the Ninth Circuit considered "an issue of first impression in this Circuit: whether a state official violates the First Amendment by creating a publicly accessible social media page related to his or her official duties and then blocking certain members of the public from that page because of the nature of their comments."  *Garnier*, 41 F.4th at 1163.  The Ninth Circuit concluded that the public officials in that case "acted under color of state law by using their social media pages as public fora in carrying out their official duties" and violated the First Amendment by blocking some individuals from accessing their social media pages.  *Id.*  But, in doing so, the Ninth Circuit also recognized that the public officials were entitled to qualified immunity because, at the time the public officials blocked the plaintiffs, "it was not clearly established that the [plaintiffs] had a 'First Amendment right to post comments on a public official's Facebook or Twitter page.'"  *Id.* at 1183.  For the same reason, Supervisor Preston is entitled to qualified immunity in this case.  Just as in *Garnier*, there was no clearly established right for Plaintiff

to post on Supervisor Preston's Twitter feed two years ago when Supervisor Preston blocked the @TheMarinaTimes account.  And even now, no court has resolved the question of whether an elected official may block posters who threaten the official or their family members.  Accordingly, because it was not clearly established that any of Supervisors Preston's actions violated the law in 2020, Plaintiff cannot pursue a claim for damages in this case.  *Id.*; *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).

Plaintiff also is not entitled to declaratory or injunctive relief because this case is moot. Plaintiff's First Amended Complaint seeks an order requiring Supervisor Preston to unblock the @TheMarinaTimes account, but he has already done so.  Preston Dec. ¶ 8.  Therefore, Plaintiff can no longer seek any meaningful relief in this action.  *Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022) (holding that it "could not be clearer that this case is moot" where the challenged action was rescinded and therefore "there is no longer any state order for the court to declare unconstitutional or to enjoin"). Plaintiff might speculate that Supervisor Preston will block one of her accounts in the future, but that speculation alone does not suffice to avoid mootness.  *Lee v. Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985) ("Speculative contingencies afford no basis for finding the existence of a continuing controversy between the litigants as required by article III.")  In light of the change in Ninth Circuit law, it has become clear that public officials cannot block social media accounts based on viewpoint. Supervisor Preston will follow Ninth Circuit law, and will not block any social media account operated by Plaintiff based on any disagreement he might have with her viewpoints.  Preston Dec. ¶ 9. Accordingly, this case is moot.

The First Amended Complaint does not state any claim that this Court can adjudicate because her claims for relief all fail based on qualified immunity and mootness.  Because Plaintiff cannot cure those deficiencies through amendment, Supervisor Preston requests that the Court dismiss the First Amended Complaint without leave to amend.

## BACKGROUND

## I.    SUPERVISOR PRESTON'S TWITTER ACCOUNT

Twitter is a social-media platform that allows individual account owners to send short online messages known as "tweets."  Tweets appear on a user's "feed," which generally is accessible by all other Twitter users (and also by non-Twitter users with internet access).  Other Twitter users can

respond to a user's tweets by posting replies on the user's feed (or by clicking a heart icon or "retweeting" the message on their own feeds).  When viewing a user's feed, replies to the user's tweets are not visible unless a specific tweet is selected.  The platform enables all account owners to "block" another Twitter user, which prevents that user from replying or otherwise reacting to the owner's tweets and also from viewing the owner's feed while logged into the blocked account.  Blocking also prevents the blocked account from "tagging" the blocking account.  Blocking one account does not prevent a Twitter user from replying, reacting to, or viewing posts using another account.

Supervisor Preston is a member of the San Francisco Board of Supervisors, a democratic socialist and long-time tenant activist.  Supervisor Preston began posting on Twitter under the handle @DeanPreston in 2009, a decade before he joined the Board of Supervisors in 2019.  Preston Dec. ¶ 2; FAC ¶ 28.  He joined Twitter to express his views on politics, tenant and housing rights, homelessness, racism, income inequality, and other matters.  Preston Dec. ¶ 2.  When he joined the San Francisco Board of Supervisors, Supervisor Preston continued to use his Twitter account to express his views on the same topics.  *Id.*  His Twitter page includes tweets that promote his legislative accomplishments and that express personal views on various topics, including affordable housing, legislation pending before the state legislature and Governor, the recall of former District Attorney Chesa Boudin, ballot measures for an upcoming election, and SFPD equipment referred to as "killer robots."  FAC ¶ 32.  His Twitter page currently identifies him as "SF D5 Supervisor, democratic socialist, tenant attorney, founder of Tenants Together."  FAC ¶ 28.  The page also includes a disclaimer which states: "Opinions my own; RT not endorsement.)"[1]  *Id.*

## II.   PLAINTIFF SUSAN REYNOLDS' POSTS USING THE HANDLE MARINA TIMES

Plaintiff Susan Reynolds is the former owner and former editor in chief of a publication called the Marina Times. The Marina Times is distributed for free in San Francisco's Marina, Cow Hollow, Pacific Heights, Russian Hill, and North Beach neighborhoods.  FAC ¶¶ 15-16.  Plaintiff alleges that she opened a Twitter account using the handle @TheMarinaTimes in 2016.  FAC ¶ 18.  Although Plaintiff sold the Marina Times in 2021, Plaintiff continues to post to Twitter using the

---

[1] RT is an acronym on social media that refers to "retweeting" content written by someone else.

@TheMarinaTimes Twitter account.  FAC ¶¶ 17-18.  Plaintiff also has a personal Twitter account using the @SusanDReynolds handle.  Preston Dec. ¶ 4.

**III.    IN RESPONSE TO THREATS OF VIOLENCE AGAINST HIS FAMILY, SUPERVISOR PRESTON BLOCKED THE MARINA TIMES TWITTER ACCOUNT IN JULY 2020.**

As an elected official, Supervisor Preston is subject to relentless misinformation campaigns, threats of violence, and other harassment designed to discredit him and his viewpoints.  Preston Dec. ¶ 3.  He is regularly attacked online by MAGA devotees, tech billionaires, and real estate lobbyists who spread extensive misinformation about him on a daily basis online and engage in highly personal attacks.  *Id.*  In November 2022, soon after the violent attack against Paul Pelosi, Speaker Nancy Pelosi's husband, during a home invasion, the San Francisco Examiner published a front-page picture of Supervisor Preston with a bullseye over his face.[2]  *Id.*  He has faced numerous threats of violence against himself and/or his family.  *Id.*

Despite the constant harassment he faces, Supervisor Preston does not block social media posters who disagree with his viewpoints, that spread misinformation, or that engage in personal attacks.  Preston Dec. ¶ 4.  Indeed, Supervisor Preston has not blocked Plaintiff's postings under her @SusanDReynolds account, even though Plaintiff uses that account to regularly attack Supervisor Preston and spread misinformation about him.  *Id.*  Nor does he block any of the other numerous accounts that disagree with him.  *Id.*

Supervisor Preston draws the line, however, when social media users call for violence against his family.  Here, @TheMarinaTimes crossed that line on June 8, 2020 when the @TheMarinaTimes called for a hashtag "PrestonsPurge" after referencing violence against Preston's family.  Specifically, on that date, @TheMarinaTimes posted a tweet that stated: "Do you have a child @DeanPreston?  If so, suppose that's [*sic*] child was kidnapped, raped and killed like Polly Klaas.  Would you want the police to respond to your call?  Would you want your child's killer in prison?  If you abolish prisons you're OK with that killer doing it again?"  Later that same day, @TheMarinaTimes posted another

---

[2] The paper subsequently issued an apology.  *See* Joe Kukura, *SF Examiner Apologizes For (Literally) Placing a Bullseye On Dean Preston's Face in Print Edition*, November 17, 2022, available at https://sfist.com/2022/11/17/sf-examiner-apologizes-for-literally-placing-a-bullseye-on-dean-prestons-face-in-print-edition/.

message that stated: "Hope he doesn't let [his kids] out at night by themselves after he gets rid of the entire @SFPD and abolishes prisons" and follows that statement with the hashtag "#PrestonsPurge." FAC ¶¶ 36-37.

Supervisor Preston reasonably understood the June 8, 2020, posts to threaten his children. Preston Dec. ¶ 6. The posts suggest that his children could face violence (including rape and murder) if let out at night by themselves, and ends with the hashtag "PrestonsPurge." A hashtag is a metadata tag that is prefaced by the hash (also known as pound or octothorpe) sign, #. On social media, hashtags are used to enable cross-referencing of content by topic or theme. Of course, hashtags are often used innocently. But, in today's political climate, they are also used as a call to violence against elected officials.[3] The hashtag contained the word "purge," which is frequently defined as "an abrupt or violent removal of a group of people."[4] The use of the violent word "purge," combined with a hashtag with the plural use of "Prestons," conveyed to Supervisor Preston that his children were at risk. Preston Dec. ¶ 6. Supervisor Preston interpreted the post and hashtag as a call to action to kill his family. *Id.*

In July 2020, Supervisor Preston blocked the @TheMarinaTimes account. FAC ¶ 38. Supervisor Preston blocked that account to prevent additional threats of violence against his family. Preston Dec. ¶ 7. Plaintiff continued to interact with Supervisor Preston's Twitter account through her @SusanDReynolds account. *Id.* ¶ 4.

## IV. PLAINTIFF'S ALLEGATIONS IN THIS LITIGATION

On December 13, 2022, over two years after Supervisor Preston blocked the @TheMarinaTimes account, Plaintiff Susan Reynolds filed this lawsuit. In a single cause of action,

---

[3] *See* Bernard Meyer, *New report: violent hashtags on Parler skyrocketed on January 6*, September 28, 2021, available at https://cybernews.com/news/new-report-violent-hashtags-on-parler-skyrocketed-on-january-6 (describing research concerning the prevalence of hashtags calling for violence against elected officials including Alexandria Ocasio-Cortez, Nancy Pelosi, Joe Biden and Eric Swalwell); Tina Nguyen and Mark Scott, *'Hashtags come to life': How online extremists fueled Wednesday's Capitol Hill insurrection*, January 8, 2021, available at https://www.politico.eu/article/hashtags-come-to-life-how-online-extremists-fueled-wednesdays-capitol-hill-insurrection/.

[4] https://www.google.com/search?q=purge+definition; see also https://www.macmillandictionary.com/us/dictionary/american/purge_1 (defining purge to mean "to remove people suddenly or violently from an organization, group").

Plaintiff alleges that Supervisor Preston's action in 2020 violated the principle the Ninth Circuit announced two years later in *Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1183 (9th Cir. 2022).  FAC ¶¶ 1-3.  In *Garnier*, the Ninth Circuit held that two elected members of the Poway Unified School District Board of Trustees engaged in state action and violated the First Amendment when they blocked posters who fill their pages with repetitive comments critical of actions by the Board members.  Here, Plaintiff alleges that Supervisor Preston engaged in state action and violated the First Amendment by blocking the @TheMarinaTimes account following the threats against his family.

Plaintiff alleges that Supervisor Preston blocked the @TheMarinaTimes account because of a disagreement with her viewpoint.  FAC ¶¶ 51, 54.  According to Plaintiff, "Supervisor Preston blocked the @TheMarinaTimes Twitter account because Ms. Reynolds used the account to express viewpoints Supervisor Preston found distasteful and/or politically inconvenient."  FAC ¶ 39.  Plaintiff alleges that Supervisor Preston blocked the account because of his "dislike for the viewpoints Ms. Reynolds expressed, particularly her criticism of Supervisor Preston's policy stances regarding defunding the police and abolishing prisons."  *Id.* ¶ 54.

Plaintiff alleges that she tried to convince Supervisor Preston to unblock her Twitter account through "tweets directed at Supervisor Preston and San Francisco City Attorney David Chiu."  FAC ¶ 45.  Plaintiff does not specify when these tweets were sent, the content of the tweets, or any information to suggest they were seen by Supervisor Preston.  *Id.*  Plaintiff also alleges that she sent a "lengthy email" to City Attorney Chiu and Supervisor Preston on February 19, 2022 (over five months before the Ninth Circuit decided the *Garnier* case on July 27, 2022).  She does not specify the contents of that email.  *Id.*

In her First Amended Complaint, Plaintiff seeks injunctive and declaratory relief requiring Supervisor Preston to unblock the @TheMarinaTimes account, and seeks compensatory, nominal, exemplary and punitive damages.  FAC at 24.

## V.   THE MARINA TIMES TWITTER ACCOUNT IS NO LONGER BLOCKED FROM SUPERVISOR PRESTON'S TWITTER PAGE.

On January 3, 2023, Supervisor Preston unblocked the @TheMarinaTimes account on Twitter.  Preston Dec. ¶ 8.  Accordingly, Plaintiff can use the @TheMarinaTimes account to freely interact

with Supervisor Preston's Twitter page. *Id.* No accounts operated by Plaintiff or anyone else are blocked from interacting with Supervisor Preston's Twitter page or any of Supervisor Preston's social media accounts. *Id.*

## LEGAL STANDARD

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a claim for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Federal jurisdiction requires a live case or controversy at every stage of litigation. U.S. Const. art. III, § 2, cl. 1; *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). If, at any point during litigation, an event occurs such that there is no longer a live case or controversy upon which relief can be granted, the claim is moot and must be dismissed. *Am. Rivers v. Nat'l Marine Fisheries Serv.*, 126 F.3d 1118, 1123 (9th Cir. 1997).

In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "The court need not presume the truthfulness of the plaintiff's allegations." *Id.* "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Id.* (quoting *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

Under Rule 12(b)(6), a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6), 8(a)(2). In order to survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "This standard does not rise to the level of a probability requirement, but it demands 'more than a sheer possibility that a defendant has acted unlawfully.'" *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 641 (9th Cir. 2014). A plaintiff need not detail all factual allegations, but the complaint must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While the court must assume all facts alleged in a complaint are true and view them in a light most favorable to the nonmoving party, it need not accept as true any legal conclusion set forth in the complaint. *Iqbal*, 556 U.S. at 678.

"Courts routinely answer questions of immunity on a pleadings motion." *Steinle v. City and County of San Francisco*, 919 F.3d 1154, 1160–62 (9th Cir. 2019). Indeed, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

## DISCUSSION

## I.   SUPERVISOR PRESTON IS ENTITLED TO QUALIFIED IMMUNITY.

Supervisor Preston is entitled to qualified immunity because his conduct did not violate any constitutional rights that were clearly established in July 2020.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).[5] "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would [have understood] that what he is doing violates that right.'" *Id.* at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* Indeed, qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects all but the plainly incompetent or those who knowingly violate the law.'" *Id.* at 743 (quoting *Malley v. Briggs*, 475 U.S. 335, 335 (1986)).

Here, Plaintiff challenges Supervisor Preston's decision to block the @TheMarinaTimes account in July 2020. FAC ¶ 38. At that time, there was no clearly established right to post comments on a public official's Twitter page in the Ninth Circuit. Until the Ninth Circuit issued its *Garnier* decision *two years after the conduct at issue in this case*, no controlling authority in the Ninth Circuit addressed the question of whether and under what circumstances a public official engages in state action or violates the First Amendment when blocking posts on social media. *Garnier*, 41 F.4th at

---

[5] Courts have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first. *Ashcroft*, 563 U.S. at 73; *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

1183 (affirming qualified immunity because, at the time the officials blocked the social media

accounts, no clearly established right existed to post comments on a public official's Facebook or

Twitter page).[6]

Likewise, there was no "robust 'consensus of cases of persuasive authority'" that could make

the constitutional rights at issue in this case clearly established.  *Garnier*, 41 F.4th at 1184.  At the

time Supervisor Preston took the action at issue in this case, only two circuits had decided cases

concerning the "novel" question of how to apply the First Amendment and state action doctrines "to

the burgeoning public fora of social media." *Id.*; *see Davison v. Randall,* 912 F.3d 666, 682 (4th Cir.

2019); *Knight First Amend. Inst. at Columbia U. v. Trump,* 928 F.3d 226, 237 (2d Cir. 2019).  The

judgment in the Second Circuit case was subsequently vacated as moot by the Supreme Court, *Biden*

*v. Knight First Amend. Inst. At Columbia U.,* 209 L. Ed. 2d 519 (Apr. 5, 2021), which "strips" the

opinion "of its binding effect."  *Camreta v. Greene*, 563 U.S. 692, 713 (2011).  That paucity of

authority cannot demonstrate a right that was "clearly established."  *West v. City of Caldwell*, 931 F.3d

978, 986 (9th Cir. 2019) (rejecting argument that isolated, out-of-circuit case could render a right

"clearly established.")

Even two years after Supervisor Preston blocked the @TheMarinaTimes account, there is still

no consensus of authority.  While it is widely recognized that "not every social media account

operated by a public official is a government account" and that the state action inquiry is highly "fact-

sensitive," the circuits are split concerning what set of facts converts a public official's actions on

social media into state action.  *Garnier*, 41 F.4th at 1173, 1177.  In some circuits (including the Ninth),

courts look to whether the account has an official appearance and serves the purpose of informing the

public about official business.  *Id.* at 1177.  The Sixth Circuit, however, "part[ed] ways with other

circuits' approach to state action" in the "novel circumstance" of social media postings, and announced

a new framework for evaluating constitutional challenges to a government official blocking a poster

on social media.  *Lindke v. Freed*, 37 F.4th 1199, 1206 (6th Cir. 2022) (explaining the split with other

circuits).  Instead of examining a social media page's "appearance or purpose," the Sixth Circuit's test

---

[6] A Petition for a Writ of Certiorari is currently pending before the Supreme Court for the *Garnier* case.  *See* https://www.supremecourt.gov/docket/docketfiles/html/public/22-324.html.

focuses on the public official's "official duties and use of government resources or state employees." *Id.* The Eighth Circuit declined to decide which test is best to assess state action, but did not find state action where (as here) the public official created the social media account long before taking office and continued to use the account to promote the public official's political views and accomplishments after taking office. *Campbell v. Reisch*, 986 F.3d 822, 825 (8th Cir. 2021).

The Supreme Court also has not yet put the constitutional issues in this case "beyond debate." *Ashcroft,* 563 U.S. at 735. The Supreme Court vacated the Second Circuit's decision as moot and has not yet had the opportunity to resolve the split between the circuits. However, when vacating the Second Circuit's opinion, Justice Thomas wrote separately to note the "principal legal difficulty that surrounds digital platforms—namely, that applying old doctrines to new digital platforms is rarely straightforward." *Biden v. Knight First Amend. Inst. At Columbia U*., 209 L. Ed. 2d 519 (Apr. 5, 2021) (Thomas, J, concurring). He explained that, while "some aspects of Mr. Trump's Twitter account resembled a public forum," the "Second Circuit's conclusion that Mr. Trump's Twitter account was a public forum is in tension" with existing public forum doctrine because Twitter is privately owned and controlled. He explained that, "[b]ecause unbridled control of the account resided in the hands of a private party, First Amendment doctrine may not have applied to respondents' complaint of stifled speech." *Id.* He predicted that "soon" the Supreme Court would "have no choice" but to resolve the still unsettled questions concerning how existing "legal doctrines apply to highly concentrated, privately owned information infrastructure such as digital platforms." *Id.*

Finally, no Supreme Court or circuit authority has addressed the question presented in this case, which concerns when an elected official may block posters who threaten the official or their family members. The Ninth Circuit had no occasion to consider that question because the posts at issue in the *Garnier* case did not "threaten physical harm." *Garnier*, 41 F.4th at 1166. While some courts have recognized the importance of allowing elected officials to protect themselves and their families from online threats and harassment, there is no "clear established" law that dictates what action elected officials may take. *See, e.g., Scarborough v. Frederick County Sch. Bd*., 517 F. Supp. 3d 569, 584 (W.D. Va. 2021) (explaining that, "if a government official received a death threat or

other violent threat on social media, it is imperative that government officials possess flexibility under the law to promptly remove such comments."); *Knight First Amend. Inst. at Columbia U. v. Trump*, 953 F.3d 216, 231 (2d Cir. 2020) (Park and Sullivan, dissenting the denial of rehearing en banc) (explaining risk that applying First Amendment forum and state action doctrines to social media will make officials "less able to defend themselves from hate and harassment" and risks causing the social media pages of public officials to be "overrun with harassment, trolling, and hate speech.")  In a time of increasing political violence and incitement to political violence, as evidenced by recent attack on Speaker Pelosi's husband, death threats directed at Senator Wiener, and a bullseye over Preston's face on a November 2022 edition of the SF Examiner, common sense dictates that there must be some action public officials can take to protect themselves and their families from threats and online harassment.  But the boundaries of what elected officials can and cannot do has yet to be determined by existing case law.

In short, the extent to which the First Amendment and state action doctrines apply to social media posts and under what circumstances is an undeveloped and evolving area of the law.  *See Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 627 (S.D.N.Y. 2020), aff'd, 857 Fed. Appx. 18 (2d Cir. 2021) (granting qualified immunity where "the body of First Amendment law governing public use of private communication platforms is just beginning to develop. It would be unreasonable for this Court to expose a public official to liability for this type of activity when so many issues of first impression remain, and so little about how courts should proceed in such cases is 'obvious.'")  When the circuits have not yet agreed on an approach and even one Supreme Court justice as expressed doubts about the application of the First Amendment to facts similar to those presented in this case, it cannot be said that any constitutional right was clearly established in July 2020.  Supervisor Preston could not be "expected to predict the future course of constitutional law." *Wilson v. Layne*, 526 U.S. 603, 617–18 (1999).  "[I]f judges thus disagree on a constitutional question, it is unfair to subject [an official] to money damages" even if the official picks "the losing side of the controversy." *Id.* at 618.

**II.   PLAINTIFF'S REMAINING CLAIM FOR RELIEF IS MOOT.**

    **A.   Plaintiff's Claim For Declaratory And Injunctive Relief Is Moot.**

Article III of the Constitution grants the Judicial Branch authority to adjudicate "Cases" and "Controversies." *Already, LLC v. Nike, Inc*., 568 U.S. 85, 90 (2013).  "An actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation."  *Id.* at 90-91 (internal punctuation removed).  A case becomes moot—and therefore no longer a "Case" or "Controversy" for purposes of Article III—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Id.* at 91 (quoting *Murphy v. Hunt*, 455 U.S. 478, 481 (1982)).  "No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights."  *Id.* (internal punctuation removed).

This case is moot.  Plaintiff pled a single cause of action based on allegations that Supervisor Preston violated the First Amendment by blocking the @TheMarinaTimes Twitter handle, and Plaintiff sought declaratory and injunctive relief to require Supervisor Preston to unblock the account.  FAC ¶¶ 51-55, 57.  Now that the @TheMarinaTimes Twitter handle is no longer blocked, there is no longer any action for this court to declare unconstitutional or enjoin.  Preston Dec. ¶ 8.  Accordingly, this case is moot.[7]  *Brach v. Newsom*, 38 F.4th 6, 11 (9th Cir. 2022) (holding that it "could not be clearer that this case is moot" where the challenged state action was rescinded and therefore "there is no longer any state order for the court to declare unconstitutional or to enjoin"); *see also McKercher v. Morrison*, 18CV1054 JM(BLM), 2019 WL 1098935, at *3 (S.D. Cal. Mar. 8, 2019) (holding First Amendment suit moot where "Plaintiff no longer has a personal interest in his claims for injunctive or declaratory relief because he obtained the relief requested - the ability to access and comment on Morrison's Facebook page").

To avoid mootness, Plaintiff will likely seek to invoke two exceptions to the mootness doctrine.  Neither apply in this case.

---

[7] Plaintiff's claim for damages fails because Supervisor Preston has qualified immunity as demonstrated in the prior section.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**B.    The Voluntary Cessation Exception To The Mootness Doctrine Does Not Apply.**

The "voluntary cessation" exception to the mootness doctrine does not apply.  Courts have recognized that "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already,* 568 U.S. at 90.  "Otherwise, a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends."  *Id.*  The voluntary cessation exception "traces to the principle that a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior."  *Brach*, 38 F.4th at 12.  Nonetheless, a case is moot if the defendant establishes that "the challenged behavior cannot reasonably be expected to recur."  *Id.* (quoting *Already*, 568 U.S. at 96).  Courts "treat the voluntary cessation of challenged conduct by government officials with more solicitude ... than similar action by private parties."  *Bd. of Trustees of Glazing Health and Welfare Tr. v. Chambers,* 941 F.3d 1195, 1198 (9th Cir. 2019) (quoting *Am. Cargo Transp., Inc. v. United States*, 625 F.3d 1176, 1180 (9th Cir. 2010)).  Indeed, government actors are granted a presumption that they are "acting in good faith."  *Id; see also Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).

Here, the voluntary cessation exception to mootness does not apply because Supervisor Preston has shown that "the challenged behavior cannot reasonably be expected to recur."  *Brach*, 38 F.4th at 12.  Supervisor Preston blocked the account in 2020 after he perceived a threat of violence against his family.  Preston Dec. ¶¶ 6-7.  That unusual situation is not likely to recur between these parties.  Indeed, Supervisor Preston is not aware that Plaintiff has made any posts threatening violence against his family since 2020, and Plaintiff does not allege any intent to threaten Supervisor Preston or his family going forward.  *Id.* ¶ 8.

Further, Supervisor Preston has made clear that he has no intention of blocking any account operated by Plaintiff in the future.  Preston Dec. ¶ 9.  Since Supervisor Preston blocked the @TheMarinaTimes account in 2020, the law in the Ninth Circuit has changed.  In light of the *Garnier* opinion, Supervisor Preston cannot block posters because they disagree with his political views, and he will not do so.  *Id.* ¶ 9.  It is unreasonable to assume that Supervisor Preston would act contrary to *Garnier*, which announced the law in this circuit concerning blocking posters on social media for the

first time. *Garnier*, 41 F.4th at 1168. Indeed, because of the *Garnier* decision, Supervisor Preston is not "practically and legally free" to block posters who disagree with him, and it is not reasonable to assume he would do so. *Carlson v. United Acads.-AAUP/AFT/APEA AFL-CIO*, 265 F.3d 778, 786 (9th Cir. 2001) (explaining that it is "unreasonable to think that the Union would resort to conduct that it had admitted in writing was constitutionally deficient"); *Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 622 (S.D.N.Y. 2020) (holding action challenging public official blocking account on social media was moot where "a defendant cannot reasonably be expected to resume conduct that it acknowledges is contrary to binding precedent.") To the contrary, he is entitled to a presumption of good faith and that he will follow the law. *Bd. of Trustees of Glazing Health and Welfare Tr.,* 941 F.3d at 1198; *Del Norte County v. U.S.*, 732 F.2d 1462, 1468 (9th Cir. 1984) ("In the absence of clear evidence to the contrary, courts presume that public officers properly discharge their duties. . ."). The new binding precedent in this circuit, along with Supervisor Preston's willingness to comply with *Garnier*, demonstrates that the challenged conduct is not likely to recur. *Cook v. Brown*, 364 F. Supp. 3d 1184, 1189 (D. Or. 2019), aff'd, 845 Fed. Appx. 671 (9th Cir. 2021) (unpublished) (explaining a change in the law is an "interim event that precludes further legal violations" and renders a case moot).

Accordingly, because the situation that gave rise to this litigation cannot reasonably be expected to recur, the voluntary cessation exception to the mootness doctrine does not apply. Preston Dec. ¶¶ 8-9; *Brach*, 38 F.4th at 12.

**C.    The Capable Of Repetition Yet Evading Review Exception To The Mootness Doctrine Does Not Apply.**

Plaintiff also cannot rely on the capable of repetition yet evading review exception to mootness. That "exception is limited to extraordinary cases where '(1) the duration of the challenged action is too short to allow full litigation before it ceases, and (2) there is a reasonable expectation that the plaintiffs will be subjected to it again.'" *Brach*, 38 F.4th at 15 (quoting *Alaska Ctr. for Env't v. U.S. Forest Serv.*, 189 F.3d 851, 854–55 (9th Cir. 1999)). Here, neither element is satisfied.

For the first element, Plaintiff must show that the "underlying action is almost certain to run its course before either this court or the Supreme Court can give the case full consideration." *Alaska Ctr. For Env. v. U.S. Forest Serv.*, 189 F.3d 851, 855 (9th Cir. 1999). "For a controversy to be 'too short to

1   be fully litigated prior to cessation or expiration,' it must be of 'inherently limited duration.'"

2   *Protectmarriage.com-Yes on 8 v. Bowen*, 752 F.3d 827, 836 (9th Cir. 2014) (quoting *Doe v. Reed*, 697

3   F.3d 1235, 1240 (9th Cir. 2012) ). That is, the controversy "will only ever present a live action until a

4   particular date, after which the alleged injury will either cease or no longer be redressible." *Id.* The

5   "limited duration of [the] controvers[y] [must be] clear at the action's inception." *Id.* "This is so

6   because the 'capable of repetition, yet evading review' exception is concerned not with particular

7   lawsuits, but with classes of cases that, absent an exception, would always evade judicial review." *Id.*

8        Here, this action is not of an inherently limited duration that prevents it from being litigated

9   fully.  As the *Garnier* case demonstrates, cases concerning the First Amendment implications of

10  blocking an account on Twitter can be fully litigated before the case becomes moot.  *Garnier*, 41 F.4th

11  at 1168–69.

12       Plaintiff also cannot satisfy the second element.  Plaintiff has the burden of showing that there

13  is a reasonable expectation that Plaintiff will once again be subjected to the challenged activity.  *Lee v.*

14  *Schmidt-Wenzel*, 766 F.2d 1387, 1390 (9th Cir. 1985).  "Specifically, the plaintiff must establish a

15  demonstrated probability that the same controversy will recur involving the same litigants." *Id.*  Here,

16  as explained above, there is no reason to assume that the same controversy will occur again between

17  the same parties.  Preston Dec. ¶¶ 8-9.  Plaintiff may attempt to speculate about future actions that

18  Supervisor Preston might take, but "[s]peculative contingencies afford no basis for finding the

19  existence of a continuing controversy between the litigants as required by article III." *Lee*, 766 F.2d at

20  1390.

21                         **CONCLUSION**

22       For the reasons stated above, Plaintiff's claim for damages fails because Supervisor Preston is

23  entitled to qualified immunity.  Plaintiff's claim for declaratory and injunctive relief is moot.  Because

24  Plaintiff cannot obtain any relief in this action, Supervisor Preston respectfully requests that the Court

25  dismiss Plaintiff's First Amended Complaint without leave to amend.

26

27

28

Dated:  January 30, 2023

DENNIS J. HERRERA
City Attorney
WAYNE SNODGRASS
TARA M. STEELEY
Deputy City Attorneys


By:  s/Tara M. Steeley
TARA M. STEELEY

Attorneys for Defendant DEAN E. PRESTON,
In his individual capacity